IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DOROTHY DENISE HALL, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | C.A. No. 4:19-CV-02164 |
| | § | |
| ARKEMA INC. and | § | |
| TEAM INDUSTRIAL SERVICES, INC., | § | |
| | § | |
| *Defendants.* | § | (JURY TRIAL DEMANDED) |

## PLAINTIFF'S <u>OPPOSED</u> MOTION TO COMPEL
## DEFENDANT TEAM'S DISCOVERY RESPONSES AND
## MOTION TO EXCEED THE COURT'S INITIAL DISCOVERY LIMITATIONS

TO THE HONORABLE JUDGE OF SAID COURT:

On July 21, 2020, the parties consented to proceed before the Honorable Magistrate Judge. *Dkt #72.* Plaintiff Dorothy Denise Hall requests the Court compel discovery responses from Defendant Team and permit Plaintiff discovery beyond the Court's Initial Discovery Limitations. The reasons are set forth below:

### UNDERLYING CASE

Plaintiff filed a suit pursuant to Title VII of the Civil Rights Act of 1964, as amended against two (2) distinct employers: 1) Team Industrial Services, Inc. ("Team") <u>and</u> 2) Arkema Inc. ("Arkema"). *Dkt #48, attached hereto as Exhibit A for convenience*. As such, she must meet her various burdens **against each**.

In employment discrimination cases, a burden shifting framework applies, requiring both the employee and employer to prove elements of the claim. First, the employee asserting discrimination must make a *prima facie* claim of discrimination. If the employee is able to prove

**each element** of a discrimination claim, the burden of proof shifts to the employer to justify the challenged action. If the employer is able to provide a legitimate, non-discriminatory reason for its actions, **the employee is then given another chance** to demonstrate that the employer's stated reason is merely a pretext for discrimination. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981) and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).

Plaintiff's suit is primarily based on the actions of two (2) coworkers: "Donald" and Adeniyi Buraimoh and the actions and/or inactions of four (4) managers from both defendants: 1) Team's Shawn Mullins, 2) Team's Moses Kormiah, 3) Arkema's Ken Joiner and 4) Arkema's Steven Pittman. *Exhibit A §3.7, 3.8, 3.10, 3.26 & 3.47.*

Plaintiff's claims center around the following five (5) distinct events giving rise to her two causes of action e.g., discrimination and retaliation: 1) gender-based harassment and stereotypes outlined in Exhibit A §3.12-3.18, & 3.28, 2) sexual harassment outlined in Exhibit A §3.26, 3) gender-based pay inequities outlined in Exhibit A §3.29-3.32, 4) gender-based disparate treatment outlined in Exhibit A §3.24, 3.35, and 5) retaliation stemming from her opposing discrimination and participating in an investigation into such including to Team's Lead Moses Kormiah as outlined in Exhibit A §3.14, 3.19, Team's Shawn Mullins as outlined in Exhibit A §3.23, 3.33, 3.44, Arkema's Ken Joiner as outlined in Exhibit A §3.26, 3.34, 3.36, 3.44, 3.46, 3.47 and Arkema's Steven Pittman as outlined in Exhibit A §3.26.

Each defendant has asserted defenses including affirmative defenses, some of which are unique to said defendants. *Dkt #s 50 & 61.* For instance, Team alone asserted nineteen (19) defenses. *Dkt #61.*

If Plaintiff is to be successful, there is much to discover. For Plaintiff, much is at stake in this suit.

## DAMAGES

A successful Title VII plaintiff can recover: i) lost wages and benefits, ii) compensatory damages, iii) punitive damages and iv) attorney's fees.

Plaintiff last worked at Defendant Arkema's plant on or about March 8, 2018 – a mere days after she last opposed discrimination. She was then excused from the Arkema plant. Her lost wage claim consists of being denied the following **full-time** weekday work at approximately $28 per hour that she enjoyed at the Arkema plant and such is generous in that it is exclusive of the times Plaintiff also worked weekends for Defendant(s):

March 25, 2019
March 26, 2019
March 27, 2019
March 28, 2019
March 29, 2019
April 1, 2019
April 2, 2019
May 28, 2019
May 29, 2019
May 30, 2019
May 31, 2019
June 3, 2019
June 4, 2019
June 5, 2019
June 6, 2019
June 7, 2019
June 10, 2019
June 11, 2019
June 12, 2019
June 13, 2019
June 14, 2019
June 28, 2019
July 2, 2019
July 3, 2019
July 5, 2019
July 8, 2019

July 9, 2019
July 10, 2019
July 11, 2019
July 12, 2019
July 15, 2019
July 16, 2019
July 17, 2019
July 18, 2019
July 19, 2019
July 22, 2019
July 23, 2019
July 24, 2019
July 25, 2019
July 26, 2019
July 29, 2019
July 30, 2019
July 31, 2019
August 1, 2019
August 2, 2019
August 5, 2019
August 6, 2019
August 7, 2019
August 8, 2019
August 9, 2019
August 12, 2019
August 13, 2019
August 14, 2019
August 15, 2019
August 16, 2019
August 22, 2019
August 23, 2019
August 26, 2019
August 27, 2019
August 28, 2019
August 29, 2019
August 30, 2019
September 2, 2019
September 3, 2019
September 4, 2019
September 5, 2019
September 9, 2019
September 10, 2019
September 11, 2019
September 12, 2019
September 13, 2019
September 16, 2019

September 17, 2019
September 18, 2019
January 24, 2020
January 27, 2020
January 28, 2020
January 29, 2020
January 30, 2020
January 31, 2020
February 3, 2020
February 4, 2020
February 5, 2020
February 6, 2020
**February 7, 2020**      **(the day of the initial scheduling conference in this case)**
February 10, 2020
February 11, 2020
February 12, 2020
February 13, 2020
February 14, 2020
February 24, 2020
February 25, 2020
February 26, 2020
February 27, 2020
February 28, 2020
March 2, 2020
March 3, 2020
March 4, 2020
March 5, 2020
March 6, 2020
March 9, 2020
March 10, 2020
March 11, 2020
March 12, 2020
March 13, 2020
March 30, 2020
March 31, 2020
April 1, 2020
April 2, 2020
April 3, 2020
April 6, 2020
April 7, 2020
April 8, 2020
April 9, 2020
April 10, 2020
April 13, 2020
April 14, 2020
April 15, 2020

April 16, 2020
April 17, 2020
April 20, 2020
April 21, 2020
April 22, 2020
April 23, 2020
April 24, 2020
April 27, 2020
April 28, 2020
April 29, 2020
April 30, 2020
May 1, 2020
May 4, 2020
May 5, 2020
May 6, 2020
May 7, 2020
May 8, 2020
May 11, 2020
May 12, 2020
May 13, 2020
May 14, 2020
May 15, 2020
May 18, 2020
May 19, 2020
May 20, 2020
May 21, 2020
May 22, 2020
May 25, 2020
May 26, 2020
May 27, 2020
May 28, 2020
May 29, 2020
June 1, 2020
June 2, 2020
June 3, 2020
June 4, 2020
June 5, 2020
June 8, 2020
June 9, 2020
June 10, 2020
June 11, 2020
June 12, 2020
June 15, 2020
June 16, 2020
June 17, 2020
June 18, 2020

June 19, 2020
June 22, 2020
June 23, 2020
June 24, 2020
June 25, 2020
June 26, 2020
June 29, 2020
June 30, 2020
July 1, 2020
July 2, 2020
July 3, 2020
July 6, 2020
July 7, 2020
July 8, 2020
July 9, 2020
July 10, 2020
July 13, 2020
July 14, 2020
July 15, 2020
July 16, 2020
July 17, 2020
July 20, 2020
July 21, 2020
July 22, 2020
July 23, 2020
July 24, 2020
July 27, 2020
July 28, 2020
July 29, 2020
July 30, 2020
July 31, 2020
August 3, 2020
August 4, 2020
August 5, 2020
August 6, 2020
August 7, 2020
August 10, 2020

Since the February 7, 2020 initial scheduling conference, Plaintiff has not worked some 116 weekdays with either Defendant. Her lost wage damages continue to increase significantly, as does her attorney's fees and costs.

Too, Plaintiff's compensatory damages will be corroborated by her healthcare professional who diagnosed her with significant mental anguish associated with her employment with Defendants.

## INITIAL SCHEDULING CONFERENCE

On February 7, 2020, the parties appeared at an initial scheduling conference. At said conference, the Court ruled that "each side shall be limited to three depositions not to exceed four (4) hours each." *See Dkt#47, line 7 of the Docket Control Order.* Plaintiff has been given 12 hours of oral depositions in a case against 2 Defendants, 4 responsible management officials and 2 peers, 2 causes of action, 5 distinct subsets of said causes of action, 33 months of employment history, and a host of defenses and affirmative defenses.

If the aforementioned restraints were not enough of a detriment to Plaintiff's case, the Court later ordered that Plaintiff propound no more than 30 "questions" to Defendant Arkema and 50 requests for production.

## PLAINTIFF'S EFFORTS TO COMPLY

Plaintiff has tried to work within the severe oral and written discovery parameters by the Court. But, it is not possible to fairly resolve the merits of Plaintiff's case without the relaxation of some of the Court's earlier discovery limitations.

For instance, from the outset Plaintiff Hall objected to such written discovery limitations when Defendant Arkema first petitioned the Court. The Court was persuaded by Defendant Arkema's position, so Plaintiff narrowed her discovery requests accordingly.

Defendant Team indicated, orally and in writing, that it intended to object and file a similar motion seeking such limitations. *See Exhibit B, fts 1 and 2.* Based thereon, the parties agreed to limit the written discovery obligation as between Plaintiff and Team to no more than 30 "questions" and

50 requests for production each – same as Arkema. **However, and very importantly, Plaintiff noted that such did not waive her right to seek the removal of such discovery limitations in the future.** Again, Plaintiff's goal was to initially try to work within the Court's parameters. That has become too harmful for Plaintiff's case for the reasons outlined later.

Team produced its last discovery responses on July 1, 2020. Believing that Team narrowed the Court's prior ruling even further than ordered in the Arkema motion, Plaintiff next tried to work with Defendant Team to resolve such discovery concerns in a letter dated July 15, 2020. Defendant Team replied back on July 31, 2020 that it was essentially standing by its prior position thus necessitating this motion.

Days after the April 30, 2020 mediation failed, Plaintiff sought oral depositions in emails beginning on May 4, 2020. Plaintiff was emphatic that she was looking to take depositions in June or July. Defendant Arkema finally responded on May 21, 2020 and initially offered to provide "**10 dates in July** and another 10 days in early August that work." (Emphasis added). It failed to provide dates in July prompting Plaintiff to file several motions, which were heard by the Court.

Through no fault of her own and despite her best effort to start sooner, oral depositions are set to begin on or about August 19, 2020. Discovery ends on September 11, 2020. After reviewing all of the written discovery responses however sorely limited, it has become increasingly clear that limiting Plaintiff to 3 depositions for a total of 12 hours is too harmful to her case. Notably, all of the persons Plaintiff needs to speak with are still active managers of the defendants or persons whose misconduct is at issue in this case. As such, the only way Plaintiff can speak with them is via depositions and Plaintiff is limited to three (3) such depositions.

**DISCOVERY RESPONSES**

Plaintiff propounded written discovery on both Defendants three (3) days after the February initial scheduling conference. As Plaintiff and Team agreed to mediate sooner rather than later, they agreed to exchange limited responses to the other's discovery requests by April 27, 2020. It was agreed that should the April 30 mediation fail, the parties would respond to the remaining discovery requests. In no way did either party waive the right to assert objections to such responses.

Based thereon, Team provided discovery responses on April 27, 2020 and July 1, 2020. *See Exhibits B and C respectively.* Team also gave an accounting as to how it counted the number of interrogatories and production propounded on Plaintiff. *See Exhibit D.*

Notwithstanding the Court's order limiting written discovery or the parties' interpretation thereof, Plaintiff requires more discovery to meet her various burdens as outlined herein.

**WHAT INFORMATION IS SOUGHT BY PLAINTIFF**

Plaintiff seeks responsive or complete answers to the following discovery propounded on Team:

**1) Her pay claim.** *~ See Exhibit C.*

<u>INTERROGATORY NO. 8</u>

During the entirety of the time Plaintiff performed services at ARKEMA INC., please identify all Inspectors and all Team Industrial Service American Petroleum Institute Inspectors including leads who performed work there setting forth as to each: their gender; pay from December 1, 2015 to December 1, 2017 including increases, and immediate supervisor.

<u>REQUEST FOR DOCUMENTS NO. 59:</u>

Any and all documents which support, evidence, relate or otherwise pertain to your responses or claims in the Interrogatories above save for Interrogatory 15 (including Interrogatory 8).

Defendant Team refuses to respond to the Requests above even though the timeline is narrowly tailored to December 2016 to March 2018. Without a response, Plaintiff cannot begin to

10

meet her burden on pay disparities based on gender. Plaintiff was told of pay disparities by a non-manager. Consequently, it is not admissible. Plaintiff is also not in a position to have personal knowledge of such information. The only way Plaintiff can ascertain such in an admissible way is for the Court to order Defendant Team to answer such requests above or allow Plaintiff to depose a Rule 30(b)(6) witness on such.

**2) The circumstances into, and investigation surrounding, "Donald's" remarks concerning Plaintiff's buttocks as outlined in Exhibit A, §3.26.** *See Exhibit B, pg 7-10 and 18 and Exhibit C, pgs 9-12.*

<u>INTERROGATORY NO. 3:</u>

While working at ARKEMA INC., please identify with specificity any and all claims or complaints made <u>by</u> Plaintiff against either of the Defendants and/or its staff, employees, or agents including but not limited to those dealing with her treatment by other workers including but not limited to Moses Kormah, Adeniyi Buraimoh, and **Donald (last name unknown),** gender-related, her journal, pay, and promotions setting forth as to each: (i) person receiving the complaint, (ii) the exact nature of the complaint, (iii) all conversations had with Plaintiff about this complaint, (iv) the investigation undertaken as a result of such a complaint, (v) the individuals involved in said complaint including witnesses interviewed, (vi) dates of each such action, and (vii) the details of each investigation. **(Emphasis added)**

<u>INTERROGATORY NO. 11:</u>

For all persons below, please provide the full name, last known residential address and phone number, job title and duties, the name of their employer from December 1, 2016 to present, work relationship to Plaintiff, and all communications you had with them regarding Plaintiff's claims hereto and employment including removal:

1. Shawn Mullins;
2. Moses Kormah;
3. Adeniyi Buraimoh;
4. Steven Pittman;
5. Ken Joiner;
6. Jeffers Lewis;
7. Chris Mullins;
8. **Donald (last name unknown),** and
9. Antonio (last name unknown). **(Emphasis added)**

<u>REQUEST FOR DOCUMENTS NO.11:</u>

Any and all documents which support, evidence, relate or otherwise pertain to any lawsuits, complaints, charges, or claims made against the following persons for discrimination, workplace misconduct, or retaliation:

1. Plaintiff
2. Moses Kormah;
3. Adeniyi Buraimoh; and
4. **Donald (last name unknown) and for whom Plaintiff complained. (Emphasis added)**

<u>REQUEST FOR DOCUMENTS NO. 59:</u>

Any and all documents which support, evidence, relate or otherwise pertain to your responses or claims in the Interrogatories above save for Interrogatory 15 (including Interrogatory 3 & 11).

Plaintiff also propounded the same discovery on Arkema. To this date, Defendants have not produced Donald's last name, information concerning the investigation into such, witness statements from such, and the outcome of such investigation, among other things.

Team refuses to provide complete answers to the above. On the one hand, it says that discovery is ongoing, and it will supplement. When? Depositions are imminent; discovery ends soon. One the other hand, Team admits that Plaintiff reported to her supervisor and Team's employee, Moses Kormah, misconduct by "Donald." *See Exhibit B, pg 9.* Under normal circumstances when Plaintiff's discovery has not been severely limited, Plaintiff would have deposed Moses Kormah for a number of reasons: 1) Kormah, too, made inappropriate gender-based comments to Plaintiff, 2) Plaintiff engaged in protected outcries to Kormah about gender-related inappropriate comments by two other male workers at the Arkema plant, 3) Kormah was one of Plaintiff's supervisors and was aware of her performance, 4) Plaintiff named Kormah as one who went into her private journal to discover her complaints about him, and 5) Kormah was named by Team as a person who supervised Plaintiff and who had conversations with Team in his capacity as such including but not limited to about Plaintiff's accusations regarding her journal

and among other things. *See Exhibit A, 3.9, 3.10, 3.14, 3.15, 3.19, 3.20, 3.21 and Exhibit B, pg 12.* <u>For all the reasons above, Plaintiff prays that the Court will allow her to depose Kormah even if for 4 hours.</u>

Why is the information on "Donald" important? The details surrounding Donald's sexually lewd comments to Plaintiff is important as to: i) evidence of Plaintiff's participation in an employment discrimination proceeding e.g., an internal investigation, which is part of her prima facie elements for retaliation, ii) whether said complaint was lodged in good-faith, which is part of her prima facie elements for retaliation, iii) all persons involved in initiating the complaint up the chain of command, investigating the complaint or participating in the investigation including as witnesses are key witnesses to this suit, iv) the persons involved in initiating the complaint which we believe it **Steven Pittman,** investigating the complaint or participating in the investigation are key because Plaintiff believes that one or more were decisionmakers in her termination **(e.g., Steven Pittman)** from the Arkema plant, which is part of her prima facie elements for retaliation involving a causal link. To be sure, Plaintiff was told by Arkema Maintenance Manager Ken Joiner that he had already discussed *his* decision to terminate her with Team Industrial Service's District Manager Mullins. He added that Plaintiff was being terminated from the Arkema plant **because Arkema Supervisor Steven Pittman referred to her as "a liability" after making two reports of gender-based discrimination and harassment,** and v) Plaintiff gave a written statement about such to Defendants' managers and believes that others gave written statements as well, among other things. Plaintiff has no such written statements, not even her own, because neither Defendant has produced such. <u>For all the reasons above, Plaintiff prays that the Court compel both Defendants to provide such information as outlined in the discovery above. Moreover, Plaintiff would like to depose a Rule 30(b)(6) witness on such even</u>

if for 4 hours. Plaintiff would not and does not have information concerning defendants' complete investigation into said claims and could only obtain such through discovery.

**3) Defenses as outlined in Defendant Team's answers. ~** *See Exhibit C.*

REQUEST FOR DOCUMENTS NO.9:

All documents which relate or pertain to the factual basis for any defense, including, without limitation, any affirmative defense, you assert in this civil action.

REQUEST FOR DOCUMENTS NO.33:

All documents which contain statements by Defendants' employees, representatives, officers, agents, or other individuals that support or negate Plaintiff's claims in this lawsuit.

REQUEST FOR DOCUMENTS NO.34:

All documents which contain statements by Defendants' employees, representatives, officers, agents, or other individuals that support or negate your defenses in this lawsuit.

Team failed to provide complete responses to the Requests above. The information sought is specifically related to Plaintiff's gender discrimination and retaliation suit including a pay disparity claim, sexual harassment, gender disparities and retaliatory termination from the Arkema plant. Team has not provided documents evidencing its defenses thereto including affirmative defenses. What documents will it use to respond to pay disparity, sexual harassment, gender disparities, and retaliation including Team's persistence that Plaintiff earned more money after leaving the Arkema plant? For all the reasons above, Plaintiff prays that the Court compel responses to such.

**4) Other claims of gender discrimination or retaliation including those lodged internally. ~** *See Exhibit C.*

REQUEST FOR DOCUMENTS NO.10:

Any and all documents which support, evidence, relate or otherwise pertain to any lawsuits, complaints, charges, or claims of gender discrimination and/or retaliation made against Defendant from 2015 to the present.

REQUEST FOR DOCUMENTS NO.15:

All documents which support, evidence, relate or otherwise pertain to grievances or complaints that have been expressed or filed either in writing or orally by Plaintiff or others asserting gender discrimination and/or retaliation.

Team failed to provide complete responses to Request For Documents # 10 and 15 to include complaints lodged internally. Not all complaints make their way to charges of discrimination or lawsuits. The information sought is specifically related to Plaintiff's gender discrimination and retaliation suit including accusations involving "Donald," Kormah and Buraimoh.

**5) Plaintiff's separation.** ~ *See Exhibit C.*

REQUEST FOR DOCUMENTS NO.12:

Any and all documents related to Plaintiff's separation from Defendant including emails, and correspondence between all Defendants.

Team has refused to produce responsive documents indicating instead that discovery is ongoing, and it will supplement. When? Team has been aware of Plaintiff's claims since her Charge of Discrimination was filed with the EEOC on or about December 3, 2018. The undersigned finds it incredulous that there are no such documents and things - including those between defendants - related to plaintiff's removal from all such facilities and assignments including Arkema and Phillips.

**6) Experts.** ~ *See Exhibit C.*

**REQUEST FOR DOCUMENTS NO.22:**

All reports, notes, depositions, transcriptions, correspondence, or other documents in the custody or control of any expert and prepared by, for, or at the direction of any expert that involve any analysis, examination, testing, or opinions of any expert in consultations or litigation concerning matters that are similar in nature to the incident made the basis of this lawsuit or to the opinions of any expert in this lawsuit.

**REQUEST FOR DOCUMENTS NO.35:**

All documents provided to, reviewed by, relied on or prepared by any individual identified as an expert witness in this case.

**REQUEST FOR DOCUMENTS NO. 49:**

All contracts or agreements between any expert and any other party or organization concerning any expert's availability to review claims or litigation as an expert in connection with this litigation.

Team has refused to produce responsive documents about its experts citing that Plaintiff

has exceeded the number of production allowed. Should Team designate experts, Plaintiff requests

responses thereto. How can Plaintiff adequately prepare for conflicting expert testimony when she

was foreclosed from taking the deposition of experts by Defendants?

**7) Other discovery Team refuses to answer citing Plaintiff exceeded the 50 allowed by the Court.** *~ See Exhibit C.*

REQUEST FOR DOCUMENTS NO.21:

Any and all documents relating to any training including but not limited to Title VII, discrimination and retaliation training TEAM INDUSTRIAL SERVICES, INC. provided to its employees during Plaintiff's employment.

REQUEST FOR DOCUMENTS NO.24:

Produce copies of all letters, notes, electronic mail and correspondence of any type you have in your possession from Plaintiff or any agent of yours regarding her employment and/or the matters made the basis of this lawsuit.

REQUEST FOR DOCUMENTS NO.25:

All documents you have subpoenaed from any third party during or in connection with this lawsuit.

REQUEST FOR DOCUMENTS NO.28:

All documents between Defendants concerning the formation of the employment or work relationship involving Plaintiff including during the interview process, the initial on-boarding and including all positions, titles, salaries and benefits sought, discussed, and approved.

REQUEST FOR DOCUMENTS NO.31:

All documents and things you or your attorneys have obtained from anyone who is not a party to this lawsuit relating to the claims and allegations in this proceeding.

REQUEST FOR DOCUMENTS NO.38:

Any employment agreements between you and Plaintiff or involving Plaintiff.

REQUEST FOR DOCUMENTS NO. 42:

All correspondence between you and Plaintiff, or involving or referencing Plaintiff related to matters made the basis of this suit, her separation, her hire, her complaints, and her pay.

REQUEST FOR DOCUMENTS NO. 57:

All separation documents, evaluations, disciplinary actions and/or counseling involving Plaintiff.

REQUEST FOR DOCUMENTS NO. 61:

All documents not called for by any other request for production relating to or referring to Plaintiff's employment or tenure at Defendants, your defenses in this suit and/or the subject matter of this lawsuit.

REQUEST FOR DOCUMENTS NO. 65:

All documents describing all benefits sponsored or provided by Defendants in which Plaintiff participated, such as health insurance plan, life insurance plan, stock option plan, incentive pay plan, bonus plan, retirement plan, deferred income plan or any other benefit plan in which Plaintiff participated or in which Plaintiff was eligible to participate.

Team refuses to provide responses to the above and yet they go to the heart of Plaintiff's economic damage claims, pretext arguments, claims that Defendants are joint employers, punitive damage claims and more.

## LEGAL ARGUMENTS

Plaintiff respectfully contends that the Court's denial of written and oral discovery beyond what was ordered in February and April of 2020 is highly prejudicial to Plaintiff and will substantially negatively affect her ability to overcome dispositive motions and a jury verdict in favor of defendants.

Moreover, such rulings are tantamount to abuses of the Court's discretion as to discovery. The Court's contested prior rulings seem to be rooted in erroneous views of the law.

At the initial scheduling conference, the Court questioned Plaintiff's lost wages. Plaintiff's counsel made it clear that she **estimated** such lost wages were about $15,000 to date e.g., February 7, 2020. Plaintiff's counsel also informed the Court that Plaintiff's full time employment at Defendant Arkema's plant ended in March of 2018 and that her employment since then had been less than the full-time, 40-hours-a-week that she had previously enjoyed at Defendant Arkema's plant.

The Court made several consequential comments and rulings seemingly based on the estimated $15,000 lost wages as of February 7, 2020 including limiting oral depositions accordingly.

Proportionality of discovery is determined by considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *FRCP 26(b)(1)*.

The amount in controversy is far greater than $15,000. Title VII allows for plaintiff to be made whole and recover i) lost wages **and benefits**, **ii) front pay and benefits, iii) mental anguish, iv) attorney's fees and v) punitive damages**. Limiting plaintiff's oral discovery requests in February of 2020 based on lost wages alone will substantially harm plaintiff's case.

Next, the Court limited plaintiff's written discovery requests in April of 2020 by essentially counting each interrogatory and production request as one and mandating that Plaintiff is limited to 30 "interrogatories" and 50 "requests for production." Such is contrary to the law and reasonings of the holding that "When an interrogatory asks a party to describe or identify communications of a particular type, it is <u>reasonable</u> to expect a full and complete answer to include time, place, persons present, and content for each such communication." *Dimitrijevic v. TV&C GP Holding Inc.,* CV H-04-3457, 2005 WL 8164073, at *3 (S.D. Tex. Aug.24, 2005) (Emphasis added). A look at Plaintiff's

interrogatories show a similar pattern of reasonable additional information expected to complete the one answer. Therefore, many of Plaintiff's requests truly counted as one discrete subpar.

By way of example, why would the following not reasonably be expected to complete the answers as to complaints by Plaintiff (Interrogatory 3), Plaintiff's separation (Interrogatory 5), or witness information (Production 2),?

## INTERROGATORY NO. 3:

While working at ARKEMA INC., please identify with specificity any and all claims or complaints made by Plaintiff against either of the Defendants and/or its staff, employees, or agents including but not limited to those dealing with her treatment by other workers including but not limited to Moses Kormah, Adeniyi Buraimoh, and Donald (last name unknown), gender-related, her journal, pay, and promotions setting forth as to each: (i) person receiving the complaint, (ii) the exact nature of the complaint, (iii) all conversations had with Plaintiff about this complaint, (iv) the investigation undertaken as a result of such a complaint, (v) the individuals involved in said complaint including witnesses interviewed, (vi) dates of each such action, and (vii) the details of each investigation.

## INTERROGATORY NO. 5:
Identify all persons involved in the decision to separate or remove Plaintiff from employment or assignments at ARKEMA, all reasons for such separation, the date said persons first contemplated separating Plaintiff, who replaced Plaintiff or handled each of her major/essential duties, and list the identity of all evidence (e.g., documents and witnesses) warranting such separation and produce same.

## REQUEST FOR DOCUMENTS NO. 2:

Any and all of the following documents relating to the matters made the basis of this lawsuit:
- (a) Written statements of witnesses
- (b) Notes of interviews with witnesses
- (c) Tape recordings of any and all oral statements and/or interviews of witnesses
- (d) Transcriptions of any tape recordings of any and all oral statements and/or interviews of witnesses
- (e) Reports regarding the results of any and all investigations
- (f) Correspondence received from or sent to Plaintiff
- (g) Correspondence received from or sent to Defendants
- (h) Correspondence received from or sent to any person other than Defendants' counsel
- (i) Documents relating to or evidencing discussions between Plaintiff and Defendants
- (j) Documents relating to or evidencing discussions between Defendants and any person other than Defendants' counsel
- (k) Documents received from or sent to any person other than Defendants' counsel.

Setting aside the two errors in law above and Defendants constant refrain parroting the Court's sentiments at the initial scheduling conference allowing them to focus only on the purported amount in controversy of $15,000 as an excuse to limit discovery responses, the rules on proportionality of discovery favors plaintiff's position for more discovery.

**The importance of the issues at stake in the action.** Much of the discovery Plaintiff seeks goes to the heart of her burdens of proof as outlined above including her *prima facie* burden and pretext arguments. Plaintiff could not address her pay disparities claim, address joint employer theories, respond to Defendants' defenses, or solidify her retaliation claims without such information.

**The amount in controversy was discussed above.**

**The parties' relative access to relevant information.** Team is better positioned to answer such information like the pay of Plaintiff's comparators and the claims against "Donald." Plaintiff would not and does not have access to the pay disparities that exist between she and her male comparators. If she deposes the one witness who discussed same, she loses out on deposing a manager and vice versa. Too, Plaintiff sought to discover same via written discovery requests but hit a roadblock as such was limited.

**The parties' resources.** Plaintiff's suit is against two companies who are seemingly highly capitalized. There has been no assertion of poverty or financial difficulties by Defendants in this case.

**The importance of the discovery in resolving the issues.** Much of the discovery Plaintiff seeks goes to the heart of her burdens of proof as outlined above including her *prima facie* burden and pretext arguments. Plaintiff could not address her pay disparities claim, respond to Defendants' defenses, or solidify her retaliation claims without such information.

and

**Whether the burden or expense of the proposed discovery outweighs its likely benefit.**
Neither Defendant has ever articulated that the discovery sought by Plaintiff would place a significant and undue burden or expense on it.

## CONCLUSION

Without access to the above information and/or documents, Plaintiff will be denied the opportunity to adequately advance her claims. Plaintiff respectfully requests this Court to issue orders compelling discovery accordingly and that the Court grants all other relief, in law or equity, including attorney's fees and costs, to which Plaintiff may be entitled.

Respectfully Submitted,

**/s/ Katrina Patrick**

_____

Katrina Patrick
Attorney-in-Charge
State Bar No. 00797218
Federal Bar No. 22038
6575 West Loop South. #500
Bellaire, Texas 77401
Telephone: (713) 796.8218
Facsimile: (281) 399.5537

**ATTORNEY FOR PLAINTIFF**
**DOROTHY DENISE HALL**

## CERTIFICATE OF CONFERENCE

Plaintiff's counsel conferred with defense counsel regarding such. As of the time of this filing, the parties were unable to reach an agreement. If the parties reach an agreement, the undersigned will immediately notify the Court.

*/s/ Katrina Patrick*

Katrina Patrick

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that the foregoing was forwarded on this **10th day of August, 2020** and pursuant to the filing protocols applicable in the United States District Court for the Southern District of Texas, Houston Division, and that service will be further made in compliance with said protocols.

**Vanessa Rogers (*Pro Hac Vice*)**
SEYFARTH SHAW LLP
700 Milam Street, Suite 1400
Houston, Texas 77007
*Counsel for Defendant Team Industrial Services, Inc.*

**Shira R. Yoshor**
GREENBERG TRAURIG LLP
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
*Counsel for Defendant Arkema, Inc.*

**Justin K. Victor**
GREENBERG TRAURIG LLP
17171 Arch
Philadelphia, PA 19103
*Counsel for Defendant Arkema, Inc.*

**/s/ Katrina Patrick**
Katrina Patrick