IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DOROTHY DENISE HALL, | § § | |
| *Plaintiff,* | § § | |
| v. | § § | C.A. No. 4:19-CV-02164 |
| ARKEMA INC. and TEAM INDUSTRIAL SERVICES, INC., | § § § | |
| *Defendants.* | § § | (JURY TRIAL DEMANDED) |

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DOROTHY DENISE HALL, | § § | |
| Plaintiff, | § § | |
| v. | § § | C.A. No. 4:19-CV-02164 |
| ARKEMA INC. AND TEAM INDUSTRIAL SERVICES, INC., | § § § § | |
| Defendants. | § | (JURY TRIAL DEMANDED) |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, Plaintiff Dorothy Denise Hall filing her Second Amended Complaint complaining of Defendants, Arkema, Inc., and Team Industrial Services, Inc., and in support thereof would show as follows:

### I.
### JURISDICTION, PARTIES, AND VENUE

1.1 This Court has jurisdiction over the causes of action alleged by Plaintiff pursuant to federal question jurisdiction and: (i) Title VII of the Civil Rights Act of 1964, as amended.

1.2 Plaintiff resides in Harris County, Texas. Plaintiff is protected by Title VII. Plaintiff Hall was at all relevant times an employee within the meaning of the applicable statutes.

1.3 Defendants operate in Houston, Texas and Pasadena, Texas. Defendants were at all times Plaintiff's employers within the meaning of the aforementioned applicable statutes.

1.4 Defendants engaged in an industry affecting commerce and employed more than (15) regular employees.

1.5 The employment practices alleged to be unlawful herein were committed within the Southern District of Texas, Houston Division. Venue is appropriate in this Court.

**VICARIOUS LIABILITY – RESPONDEAT SUPERIOR**

1.6 Whenever in this complaint it is alleged that the Defendants did any act or thing, it is meant that the Defendants' owners, supervisors, agents, servants, employees, or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of the Defendants, or was done in the normal and routine course and scope of employment of Defendants' owners, supervisors, agents, servants, employees, or representatives.

1.7 The acts of management were performed while in the employment of the Defendants, to further the Defendants' business, to accomplish the objective for which said managers were hired, and within the course and scope of that employment or within the authority delegated to said employees.

## II.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

2.1 Plaintiff Hall filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission on or about December 3, 2018. In that Charge, No. 460-2019-00031, and any amendments and/or attachments thereto, Plaintiff Hall asserted that she was discriminated against on the basis of sex and in retaliation for opposing such discrimination.

2.2 Therefore, Plaintiff was forced to file this suit in order to protect her employment rights. Plaintiff has exhausted her administrative remedies and files this suit within the statutory limitations period.

## III.
## FACTUAL BACKGROUND

3.1  Dorothy Denise Hall (female) has worked in a male-dominated industry since she was about eighteen (18) years old.

3.2  Plaintiff Hall began working for Defendant Team Industrial Service in or about June of 2015.

3.3  Defendant Team Industrial Service sends its employees out to various plants for a host of jobs.

3.4  Initially, Defendant Team Industrial Service outsourced Plaintiff Hall to work at TPC as an inspector.

3.5  In or about December of 2016, Team Industrial Service next outsourced Plaintiff Hall to work for Defendant Arkema, Inc. as an inspector. Her duties included but were not limited to: inspecting piping, vessels, and wells, among other things.

3.6  As such, Plaintiff Hall was "nested" at Defendant Arkema's plant. This meant she was assigned to daily weekday work at Arkema's plant working at a **minimum** forty (40) hours per week, five (5) days a week. *And,* Plaintiff Hall was the only female inspector at the Arkema plant.

3.7  *And,* she was supervised by managers and supervisors from both Defendants.

3.8  Specifically, Plaintiff Hall was supervised by Team Industrial Service's District Manager Shawn Mullins (male).

3.9  She also worked under two Team Industrial Service American Petroleum Institute ("API") Inspectors: Moses Kormah (male) and Adeniyi Buraimoh (male).

3.10  Moses Kormah was Team's Lead API at the Arkema plant.

3.11  Adeniyi Buraimoh was specifically assigned to acclimate Plaintiff Hall to her duties.

3.12   Yet, early on into her tenure at the Arkema plant, API Buraimoh (commonly called "AB") made his feelings known about females working in the field.

3.13   Inspector Buraimoh would **frequently** ask Plaintiff Hall, "Why are you working in this field?" He would add, Plaintiff Hall is pretty and "This is not a field for women." Instead, Inspector Buraimoh encouraged Plaintiff Hall to go "work in safety."

3.14   Inspector Buraimoh **repeated** such comments so often that Plaintiff Hall made her opposition to such negative gender stereotypical remarks concerns known to Lead Inspector Kormah. Lead Inspector Kormah commented that Plaintiff Hall was indeed "too pretty" to be in this field but that Inspector Buraimoh should not have said those things to her. Lead Inspector Kormah added that Plaintiff Hall should work in management and implied she should work in safety as well.

3.15   Lead Inspector Kormah also addressed Plaintiff Hall's concerns with Inspector Buraimoh.

3.16   In response, Inspector Buraimoh became cold and distant towards Plaintiff Hall. In fact, he would very often refuse to work with, or even talk to, her. Inspector Buraimoh justified his refusal to work with Plaintiff Hall by saying that women should not work in the field.

3.17   Plaintiff Hall felt isolated.

3.18   When Inspector Buraimoh would speak to Plaintiff Hall, he did so condescendingly. And, he continued to question why females would want to work in the field versus in the safety department.

3.19   Plaintiff Hall once again made her opposition to such negative gender stereotypical remarks known to Lead Inspector Kormah.

3.20 Lead Inspector Kormah's response was that such was just how Inspector Buraimoh behaved. Too, Lead Inspector Kormah promised to work with Plaintiff Hall himself when he "could" given that he was both a Lead and an API.

3.21 This was not a workable solution because Lead Inspector Kormah was not always available. And, Plaintiff Hall, Inspector Buraimoh, and Lead Inspector Kormah were the only inspectors.

3.22 Inspector Buraimoh continued to lash out at Plaintiff Hall.

3.23 Things were not improving. Plaintiff Hall next made an outcry to Team Industrial Service's District Manager about her opposition to such negative gender stereotypical remarks and subsequent maltreatment. His response was simply that he would talk to Inspector Buraimoh but that such was just how Inspector Buraimoh behaved.

3.24 Plaintiff Hall was not respected or valued by her managers and peers because of her sex.

3.25 In fact, she was sent home one day based on untruths by Lead Inspector Kormah.

3.26 In or about June of 2017, Plaintiff Hall was objectified sexually by Donald (last name unknown) while at Arkema. Donald (male) commented on the size of Plaintiff Hall's buttocks. It was overheard by Arkema Supervisor Steven Pittman (male). Supervisor Pittman involved Arkema Maintenance Manager Ken Joiner (male). Arkema Supervisor Jeffers Lewis (male) and Team District Manager Mullins also became involved.

3.27 Donald ultimately apologized for his misconduct. Yet, Plaintiff Hall's problems were far from solved.

3.28 After learning of the sexual harassment that occurred between Plaintiff Hall and Donald, Inspector Buraimoh ramped up his offensive comments about females not working in the chemical field.

3.29   Despite the fact that Plaintiff Hall earned several industry-relevant certifications, had years of experience under her belt and was undoubtedly qualified, she was treated differently from her male peers simply because she is female.

3.30   Plaintiff Hall had not once received a pay raise.

3.31   Conversely, her male counterparts received pay increases.

3.32   Specifically, Team Industrial Service Chris Mullins (male) received a pay increase during Plaintiff Hall's tenure at Arkema.

3.33   On several occasions, Plaintiff Hall asked Team Industrial Service's District Manager Mullins about a pay raise. Mr. Mullins' response was always that he was "working on it."

3.34   For all of the foregoing reasons namely her opposition to the negative gender stereotypical remarks and subsequent maltreatment, Plaintiff Hall told Arkema Maintenance Manager Joiner that she felt her job was in jeopardy because of Inspectors Buraimoh and Kormah and their continued angst towards her.

3.35   Plaintiff Hall's job became increasingly difficult as her relationship with Inspectors Buraimoh and Kormah disintegrated after her opposition to the gender discrimination. Both male inspectors had computers. Plaintiff Hall did not. Consequently, Plaintiff Hall was forced to go to either Inspector Buraimoh or Lead Kormah to use their computers and printers to do her job.

3.36   On approximately February 28, 2018, Plaintiff Hall spoke with Arkema Maintenance Manager Joiner again. She let him know that she was not being respected as a team member and did not have proper access to the computers to do her job. She specifically told him that she felt this was because of her gender.

3.37  On or about March 1, 2018, Plaintiff Hall had an eerie feeling. She decided to jot down a few notes in her personal journal about her belief that she was being targeted at work. Most of the other employees were in the field that day. Plaintiff Hall, Inspector Buraimoh, and Lead Inspector Kormah were in the office.

3.38  Plaintiff Hall felt Lead Inspector Kormah peering over her shoulder and down at her journal. She also witnessed the two inspectors whispering amongst themselves.

3.39  When Plaintiff Hall returned to her desk, she observed that her purse appeared different from how she left it.

3.40  Around the same time, another worker named Antonio asked who left a piece of paper on the copier machine. Plaintiff Hall observed that it was a copy of her personal journal.

3.41  Inspector Buraimoh looked on worriedly.

3.42  Plaintiff Hall questioned who went inside her purse. Inspector Buraimoh's response was telling. He answered, "no one went into your purse and made copies." Interestingly, that was not what Plaintiff Hall had asked.

3.43  Plaintiff Hall retorted that she was going to report such intrusion. Inspector Buraimoh then grabbed Plaintiff Hall's wrist forcefully and pleaded, "Please don't do this to us."

3.44  Arkema Maintenance Manager Joiner and Team Industrial Service's District Manager Mullins arrived on the scene and Plaintiff explained the occurrence.

3.45  Team Industrial Service's District Manager Mullins asked Plaintiff Hall to apologize to Inspector Buraimoh, and Lead Inspector Kormah and "smooth things out."

3.46  Soon thereafter, Arkema Maintenance Manager Joiner asked Plaintiff Hall to meet with him in his office.

3.47   Arkema Maintenance Manager Ken Joiner told Plaintiff Hall that he had already discussed his decision to terminate her with Team Industrial Service's District Manager Mullins and that Arkema Supervisor Steven Pittman referred to her as "a liability" after making two reports of gender-based discrimination and harassment.

3.48   Plaintiff Hall questioned her March 8, 2018 termination given that Lead Inspector Kormah had failed a drug test and was not terminated.

3.49   *And,* Plaintiff Hall questioned her March 8, 2018 termination given that another employee threatened to kill a fellow pregnant employee and was not terminated.

3.50.   After Plaintiff Hall's March 8, 2018 termination at the Arkema plant, she has been left with uncertain, sporadic employment with Defendant Team Industrial Services' other clients – some work has been sporadic, some has been more full-time. As a result of incomparable assignments, work hours and pay rates, Plaintiff Hall has lost income, among other things outlined below in the Damages section.

## IV.
## CAUSES OF ACTION

### A. SEX DISCRIMINATION PURSUANT TO TITLE VII AS TO BOTH DEFENDANTS

4.1   Plaintiff incorporates by reference the allegations of the preceding paragraphs.

4.2   Defendants, through their agents, supervisors, or employees violated Plaintiff's civil rights in violation of Title VII of the Civil Rights Act of 1964.

4.3   Defendants engaged in unlawful intentional discrimination against and harassment of Plaintiff on the basis of her sex as outlined above.

4.4   Defendants' acts as alleged herein were motivated by and due to Plaintiff's sex.

4.5   Further, the Defendants discriminated against and harassed Plaintiff in a willful manner.

## B. RETALIATION PURSUANT TO TITLE VII AS TO BOTH DEFENDANTS

4.6  Plaintiff incorporates by reference the allegations of the preceding paragraphs.

4.7  After rejecting and opposing such harassment and discrimination based on her sex Plaintiff Hall was subsequently harassed, violated, assaulted, and forced to leave her full-time position at Defendant Arkema's facility.

4.8  Defendants had no legitimate business reasons for any such acts. Each act of retaliation is in violation of Title VII's anti-retaliation provision.

4.9  As a direct and proximate result of the Defendants' willful, knowing, and intentional discrimination and retaliation against her, Plaintiff Hall has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff Hall is thereby entitled to general, compensatory, and punitive damages in amounts to be proven at trial.

4.10  The above-described acts on the Defendants' part were undertaken in violation of Title VII and proximately caused Plaintiff Hall substantial injuries and damages.

## V.
## JURY DEMAND

5.1  Plaintiff requests that this action be heard before a jury.

## VI.
## DAMAGES

6.1  Defendants' conduct constitutes violations of statutory law. Such unlawful conduct seriously affects Plaintiff Hall in her occupation, trade and business. Because of the Defendants' unlawful conduct, Plaintiff has suffered, suffers, and will continue to suffer humiliation, mental anxiety and stress, and other damages. Plaintiff has suffered direct injury as a

proximate result of the unlawful discriminatory practices, policies and procedures of both Defendants. Accordingly, Plaintiff Hall seeks all general, special, incidental, economic, compensatory, punitive, and consequential damages in an amount to be proved at trial including punitive damages.

6.2   Because of the Defendants' unlawful and tortuous conduct, it has been necessary for Plaintiff Hall to retain the undersigned attorney to represent her in these causes of action. Plaintiff has agreed to pay her attorney reasonable attorney's fees for the preparation and trial of these causes, and further for any appeal thereof should same become necessary.

6.3   Additionally, Plaintiff Hall has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve her ability to earn a living. Accordingly, Plaintiff Hall seeks all general, special, incidental and consequential damages as shall be proven at trial.

6.4   Further, Plaintiff Hall seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to the Defendants. Plaintiff Hall also seeks post-judgment interest at the maximum rate allowed by law in the event that the Defendants do not promptly tender damages assessed against them and to avoid unjustly enriching the Defendants.

## VII.
## PRAYER

WHEREFORE, premises considered, Plaintiff prays that the Defendants be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendants for:

    a.    Permanent injunction enjoining the Defendants, their agents, successors, employees, and those acting in consort with the Defendants from engaging in any employment practice which includes discrimination on the basis of sex and in retaliation thereof.

b.  All damages to which Plaintiff may be entitled pursuant to this Petition, or any amendment(s) thereto, including but not limited to back pay, reinstatement or front pay in lieu of reinstatement, loss of earnings in the past, loss of earning capacity in the future, loss of benefits in the past, loss of benefits in the future, statutory relief at law, and equity;

c.  Compensatory damages for pain and mental suffering in the past and future;

d.  Punitive damages in an amount above the minimum jurisdictional limit of the Court;

e.  Reasonable attorney's fees, with conditional awards in the event of appeal;

f.  Pre-judgment interest at the highest rate permitted by law;

g.  Post-judgment interest from the judgment until paid at the highest rate permitted by law;

h.  Costs of court and expert witness fees incurred by Plaintiff in the preparation and prosecution of this action; and

i.  Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Petition or by any amendment hereto.

Respectfully submitted,

Law Offices of Katrina Patrick

*/s/ Katrina S. Patrick*
_____

**Katrina Patrick**
Attorney-in-Charge
Federal Bar No. 22038
6575 West Loop South, #500
Bellaire, Texas 77401
Telephone: (713) 796-8218
Facsimile: (281) 399.5537
katrina@voiceoftheemployees.com

**ATTORNEY FOR PLAINTIFF
DOROTHY DENISE HALL**

## CERTIFICATE OF SERVICE

I certify that I electronically submitted the foregoing document with the Clerk of the Court for the U.S. District Court, Southern District of Texas, on February 21, 2020, using the electronic case filing system of the Court.

*/s/ Katrina Patrick*
**Katrina Patrick**