United States District Court
Southern District of Texas

**ENTERED**

December 23, 2020

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DOROTHY DENISE HALL, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.: 4:19-cv-02164 |
| | § | |
| ARKEMA, INC. & TEAM INDUSTRIAL | § | |
| SERVICES, INC., | § | |
| *Defendant*. | § | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Defendant Arkema, Inc.'s Motion for Summary Judgment. ECF 62. Having considered the parties submissions and the law, the Court GRANTS Arkema's motion and dismisses Plaintiff's claims against Arkema with prejudice.

### I.    Background

The statements in this section are undisputed for purposes of summary judgment unless otherwise noted. Defendant Team Industrial Services provides specialty industrial services to clients in the refining, petrochemical, power, pipeline, and other heavy industries. One of Team's clients is Defendant Arkema, Inc., a producer of specialty materials and chemicals. Team Senior Operations Manager Shawn Mullins hired Plaintiff Dorothy Hall in June 2015.

In December 2016 Team assigned Hall to work as a Level II Technician at Arkema's Clear Lake, Texas, facility. Hall's assignment was to assist Team's American Petroleum Institute (API) inspectors in catching up with Level II compliance testing. Hall contends this was a "nested" full-time, long-term position with no defined end date; Team characterizes Hall's assignment as a "project" position, meaning it was a full-time, long-term assignment that would end when the compliance project was complete. Other Team employees, including Moses Kormah and Adeniyi

Buraimoh (known as AB) had been working at the Arkema facility for years before Hall arrived. Mullins was the supervisor for Team employees, including Hall, working at Arkema's Clear Lake facility, but he did not have an office there.  The Arkema managers on-site at the Arkema Clear Lake facility where Hall was assigned to work were Ken Joiner, Scott McCray, and Steve Pittman.

Hall has testified that soon after her arrival at Arkema, Team employee AB began demeaning her for being a woman working in the chemical field.   Team employee Kormah was aware of, but did nothing to stop, AB's comments.  Kormah also made disparaging comments to Plaintiff.  Hall claims she reported the situation to Mullins who promised to talk to AB, but the situation did not improve.

In June 2017, Steve Pittman overheard Donald Gibson, an employee of a different contractor, make a comment about Hall's buttocks.  Pittman called Hall into his office to make sure she was okay and reported the incident to Joiner and Mullins.  Joiner confronted Gibson about the incident.  Hall states "In the end, Gibson apologized to me and I accepted it and moved on." ECF 85-1, ¶24.

On March 1, 2018 someone took Hall's journal out of her purse and made copies of some of the entries.  Hall is convinced it was Kormah and AB because they had seen her writing in it and were whispering to each other.  Hall reported the incident to Joiner, who called in Kormah and AB to discuss the matter.  They denied involvement.  Joiner called a meeting with Hall and Mullins to discuss the matter.  Hall recorded the conversation and submitted a transcript of the recording with her summary judgment Response.  Joiner and Mullins expressed concern for Hall's distress and agreed it was unacceptable for anyone to violate her privacy by going into her purse.  Joiner promised to investigate.  Joiner and Mullins both confirmed they had no problems with Hall's work but Mullins recognized there was tension between her and AB and Kormah.  Mullins seemed

to think her co-workers were concerned about her because she had recently stopped talking to them. Hall indicated she was considering quitting her job, and Joiner encouraged her not to make any rash decisions that could impact her career. Joiner suggested that she take the rest of the day off, with pay, and Mullins concurred. Joiner also suggested that if Hall felt she could not work at the Arkema facility any longer she should ask Team for a transfer but should not quit her job.

Hall took the rest of that day and weekend off and returned to work at the Arkema facility on Monday, March 5, 2018. Hall contends that Joiner called her into his office and told her that he, Mullins, and Pittman had decided to remove her from the Arkema plant, and that Pittman viewed her as a liability because she had made reports of gender discrimination and harassment. Joiner called Mullins and put him on speaker phone with Hall present. According to Hall, Joiner told Mullins that Joiner would like to go forward with removing Hall from the Arkema site as previously discussed. Hall worked at Arkema for several more days and then was transferred to a different worksite. Hall maintained her employment with Team after these incidents, but has not had full-time, consistent work after leaving the Arkema location. In March 2020 Team placed Hall, along with many other Team employees, on furlough.

Hall filed this lawsuit against Arkema and Team for gender discrimination and harassment as well as retaliation. Hall contends that Arkema and Team are her joint employers. Arkema moves for summary judgment on Hall's claims on the grounds that (1) it has never been Hall's employer and (2) Hall has not suffered an adverse employment action.

## II.     Summary Judgment Standards

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact

for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002). If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and must present evidence such as affidavits, depositions, answers to interrogatories, and admissions on file to show "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *R.L. Inv. Prop., LLC v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013). In ruling on a motion for summary judgment the Court does not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." *Honore v. Douglas,* 833 F.2d 565, 567 (5th Cir. 1987). However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (quoting *Celotex*, 477 U.S. at 325).

### III.    Analysis

Arkema moves for summary judgment on all of Hall's claims on the basis that (1) as a matter of law, Hall has no Title VII claim against Arkema because Arkema has never been Hall's employer, and (2) Hall has not suffered an adverse employment action. Because the first ground is dispositive, the Court does not address the second.

### A.  Title VII provides a cause of action only against an employer.

Title VII prohibits employers from discharging or otherwise discriminating against any individual because of their sex.  42 U.S.C. § 2000e-2(a)(1).  In order to recover under Title VII, a plaintiff bears the burden of proving the defendant is her employer.  42 U.S.C. § 2000e(b).  With a couple exceptions not relevant here, Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person."  42 U.S.C.A. § 2000e.  If a defendant meets the statutory definition, the court next must determine whether an employment relationship exists between the plaintiff and defendant.[1]  *Garcia v. Shell Oil Co.*, No. CV H-08-1734, 2009 WL 10720153, at *5 (S.D. Tex. July 10, 2009), report and recommendation adopted, No. CV H-08-1734, 2009 WL 10720154 (S.D. Tex. July 27, 2009)(citing *Deal v. State Farm County Mut. Ins. Co. of Tex.*, 5 F.3d 117, 118 (5th Cir. 1983)).  For Title VII purposes, a plaintiff may have an employment relationship with "joint employers" in some cases.  Two independent companies might qualify as "joint employers" of an individual when the companies "share or co-determine those matters governing the essential terms and conditions of employment."  *Boutin v. Exxon Mobil Corp.*, 730 F. Supp. 2d 660, 680 (S.D. Tex. 2010).

When analyzing whether a defendant was a joint employer of the plaintiff employee where one entity contracts with another to provide services, district courts in the Fifth Circuit examine five control factors.  *See  E.E.O.C. v. Valero Ref'g-Texas, L.P.*, Civil Action No. 3:10-cv-398, 2013 WL 1168620, at *4 (S.D. Tex. Mar. 13, 2013) (recognizing the Fifth Circuit has not clarified the applicable joint employer test but applying five factor test identified in *Boutin*, 730 F. Supp.

---

[1] In this case there is no dispute that Arkema meets the statutory requirements for an employer.

2d at 680)).  For this analysis courts consider whether the alleged joint employer:  (1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process.  *Id.*; *Duhon v. Southern (Scrap) Recycling*, Civil Action No. 14-00383-BAJ-EWD, 2016 WL 6832632, at *4 (M.D. La. Nov. 17, 2016) (applying five-factor joint employer test).[2]

### B.  Hall has failed to create a genuine issue of material fact as to whether Arkema was her joint employer.

It is undisputed by all parties that Team was Hall's employer.  Hall argues that Arkema was her joint employer.  However, the fact that Hall worked in an Arkema facility and was subject to certain of Arkema policies is not sufficient as a matter of law to create joint employer status for Arkema.  Courts within the Fifth Circuit have consistently found that arrangements like the one between Team and Arkema do not create a joint employer relationship.  *Boutin*, 730 F. Supp. 2d at 680-83; *Valero Ref'g*, 2013 WL 1168620, at *3-5.  Hall has cited no authority finding a joint employer relationship under similar circumstances.  *See* ECF 85.

In order to determine whether Arkema exercised sufficient control over the essential terms and conditions of Hall's employment to qualify as her joint employer, the Court must analyze the five factors set forth above.  *See Boutin*, 730 F. Supp. 2d at 680.  Having done so, the Court

---

[2] Hall argues for application of a "hybrid" test that considers both the "economic realities" of the work relationship and the extent of the alleged joint employer's control over the worker.  ECF 85 at 16-17.  The Fifth Circuit announced the "hybrid" test in *Mares v. Marsh*, 777 F.2d 1066, 1067 (5th Cir. 1985) as the appropriate test to determine whether a worker was defendant's employee or an independent contractor.  No party here argues that Hall is an independent contractor.  Nonetheless, the control component is the most important component of the hybrid test, while the "economic realities" component of the hybrid test focuses on "whether [1] the alleged employer paid the employee's salary, [2] withheld taxes, [3] provided benefits, and [4] set the terms and conditions of employment."  *Garcia*, 2009 WL 10720153, at *5.  The joint-employer test articulated in *Boutin* and applied here is a test geared to determining the alleged employer's control over plaintiff's work.  The economic realities of Hall's relationship with Arkema are discussed in section III.B.3 below.  Application of the hybrid test would also result in a finding against a joint employer relationship.

determines that a reasonable factfinder could not find that Arkema was Hall's joint employer.

### 1.      Hall has not shown Arkema had the authority to hire and fire her.

Hall's evidence that Arkema controlled hiring and firing decisions consists solely of her subjective belief that Mullins merely went along with Joiner's decision to transfer her and is not corroborated by any written documentation or corroborating testimony.  Hall's only evidence to support her contention that Joiner was the decision-maker is her statement that on March 5, 2018 Joiner told her that "they — Joiner, Mullins, and Pittman — decided to remove me from the Arkema plant" and that "Pittman viewed Hall as a 'liability' after making two reports of gender-based discrimination and harassment." ECF 85-1, ¶¶ 38-39.  She alleges that on March 5, 2018 Joiner placed Mullins on speaker phone and said "I would like to go ahead and move forward with . . . moving Ms. Hall from the site."  *Id.*  Joiner's comments recorded during the March 1, 2018 conversation confirm that Team was the entity with authority to transfer Hall to another work site. ECF 85-10 at 2 (Joiner: "What about if they transfer you somewhere else?  Trust me, they like your work ethics.  They can transfer you somewhere else.").  Joiner's alleged statements on March 5, 2018, as recounted by Hall, indicate at most that he was in favor of Hall's removal from the site, and do not demonstrate that he or other Arkema managers had the authority to fire or transfer her. Arkema has submitted evidence demonstrating that the transfer decision was made by Team, specifically Mullins and Team HR manager Nep Reyes, because the tension between Hall, Kormah, and AB created a safety hazard.  ECF 62-5 at 2-3 (Team Interrogatory Resp.); 62-6 (Joiner Dec.); 62-7 at 10 (Team Interrogatory Resp.); 90-2 at 9 (Joiner Depo.); 90-3 at 8, 11 (Mullins Depo.).[3]

No party disputes that Team hired Hall in June 2015 and she remained employed by Team

---

[3] Joiner and Mullins also testified that Hall agreed to the transfer, but she denies it.  ECF 62-6; 85-11 at 8; 85-1 at ¶ 49.

until a few months ago.[4]   The Fifth Circuit has rejected the idea that a company's right to demand a worker provided pursuant to a contract be removed from its worksite transforms that company into a joint employer of the worker.  *Valero Ref'g*, 2013 WL 1168620, at *4 (citing *Jones v. Norfolk S. Co.*, 348 F. App'x 970, 973 (5th Cir. 2009) and *Boutin*, 730 F. Supp. 2d at 680-81).  At most, Hall's evidence shows Joiner agreed it would be best to remove Hall from the Clear Lake facility.  Hall's evidence does not demonstrate that Arkema controlled hiring and firing decisions related to Hall and cannot support such a finding.

> ### 2.    Hall has not shown Arkema had authority to discipline her.

There is no evidence in the summary judgment record regarding Arkema's authority to discipline Hall.  Hall's evidentiary support for her argument that Arkema retained control over disciplinary procedures for Team employees consists of Joiner expressing his intention to investigate the purse incident and to discipline Kormah and AB by having them removed from the Arkema facility if they were involved.  ECF 85-9 at 9.  Hall reads too much into Joiner's statements.  There is no evidence that Joiner actually disciplined Kormah, AB, or any other Team employee.  *See* ECF 90-2 at 8 (Joiner never determined who was responsible for going through Hall's purse).  Furthermore, a company's ability to remove or bar from its facility a worker provided pursuant to a contract when the worker violates the company's work rules or policies, does not create a joint employer relationship.  *Boutin*, 730 F. Supp. 2d at 681.

> ### 3.    Hall has not shown that Arkema maintained records of hours, handled the payroll, or provided insurance for her.

Hall contends, without documentary support, that Arkema approved her pay, set her hours, and approved her vacations.  ECF 85-1.  However, the evidence supports only a finding that Team

---

[4] The Declaration of Shawn Mullins submitted in connection with Teams Motion for Summary Judgment reveals that Hall was laid off in October 2020 along with 27 other Houston area technicians.  ECF 94-1 at 7.

employees informed Joiner of their planned vacation (ECF 85-13 (Kormah email to Joiner)); that

an Arkema representative signed a Team report of weekly hours as the "client" (ECF 85-17 (hours

reports)); and that Kormah,in conjunction with Arkema Inspectors, scheduled Hall's work (ECF

62-7 at4 (Team Interrogatory Resp.)).  Hall also argues that Arkema controlled her pay because

on March 1, 2018 Joiner told her she could take the rest of the day off and he would pay her.  ECF

85-9 at 11.

There is no dispute that Team paid Hall's salary and all benefits, including the Team 401(k)

plan and medical, dental, vision, and life insurance.  ECF 62-4 (payroll records); 62-6; (Joinder

Dec.); 90-1 at 5-6 (Hall Depo.); 62-7 (Team Interrogatory Resp.).  Team maintained Hall's wage

records and issued her W-2 tax forms.  ECF 62-3 at 7 ("plaintiff's post-Arkema employment

history can best be provided by Team."); 62-4 (Team payroll records); 90-1 at 9 (Hall. Dep.); 62-

6 (Joiner Dec.); 62-7 at 3 (Team Interrogatory Resp.).  Joiner's one-time statement that he would

pay her if she took the day off does not change the fact that Team, not Arkema, paid all of Hall's

salary and benefits.  The complete absence of any evidence that Arkema controlled Hall's pay or

benefits weighs heavily against a finding that Arkema was Hall's joint employer.  *See Boutin*, 730

F. Supp. 2d at 681 (although an ExxoMobile supervisor signed contract worker's time sheets

before she turned them in, this factor did not weigh in favor of joint employer status because

ExxonMobile was not responsible for keeping the records or paying the worker); *Valero Ref'g*,

2013 WL 1168620, at *5 (this factor weighed against a joint employer finding where Valero did

not maintain records of hours worked, handle payroll, or provide insurance).

### 4.    Hall has failed to show Arkema employees were her direct supervisors.

Hall contends that Arkema managers Joiner, McCray, and Pittman supervised her work.

ECF 85-1 ¶ 12.  Hall has presented no evidence to support this contention.  Hall's direct supervisors

while she was at Arkema were Kormah and Mullins.  ECF 85-1 ¶¶ 10-11; 62-6; 62-7.  Hall argues that Joiner interacted with her daily and required all contractors to attend safety meetings.  ECF 85-12 at 19-20 (Joiner Dep.).  However, Hall concedes Joiner "did not tell [her] how to do [her] job," and Joiner has testified he has no knowledge of how to do Hall's job and did not oversee her job performance.  ECF 90-1 at 10 (Hall Dep.); 90-2 at 9 (Joiner Dep).  Hall admits she did not receive performance evaluations from Arkema beyond a verbal "good job" on one or two occasions.  ECF 90-1 at 12.  Arkema's evidence also shows that while Hall was subject to Team's "Code of Conduct" and substance abuse policy (ECF 62-2 (Hall personnel file)), she never signed an Arkema handbook or code of conduct.  ECF 62-6.  Team provided Hall all her uniforms, equipment, and tools as well as an email account (ECF 62-7 at 5-6).  Hall did not have an Arkema issued computer or email account.  ECF 90-1 at 11.

Hall's evidence regarding the oversight provided by Arkema managers is consistent with a finding that Arkema retained control of the overall scope of the project it contracted with Team to perform, a finding which does not create a joint employer relationship.  *See Boutin*, 730 F. Supp. 2d at 682 (supervision designed "to ensure that the contract with [Team] was performed as required" does not support joint employer status).  Hall's evidence is insufficient to create a genuine issue of material fact as to whether Arkema directly supervised Hall to the extent that it should be deemed her joint employer.

### 5. Hall has presented no evidence regarding Arkema participation in a collective bargaining process.

There is no evidence related to the collective bargaining process in the record for this case.

### C.    Conclusion on Joint Employer Analysis

Having considered all of the relevant factors, the Court concludes that Arkema was not Hall's joint employer:  Team was responsible for all compensation, benefits, and record keeping functions for Hall; Arkema's supervision was limited to making sure safety rules were met and the purpose of its contract with Team was achieved; and Arkema did not set the essential terms and conditions of Hall's employment.  *See Valero Ref'g*, 2013 WL 1168620, at *1 ("Modern was in charge of hiring employees to work on the [Valero] improvement project.  Within the scope of Modern's authority, it would also pay these workers, discipline them, supervise their work, set their work schedules, provide the tools and equipment used on the project, and have the authority to fire them.  Valero retained the right to establish safety rules and protocols that Modern and its employees were expected to follow and the right to remove any Modern employee from its premises.").  Hall has not met her burden to come forward with sufficient evidence to create a genuine issue of material fact on the issue that Arkema was her joint employer.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Therefore, under Federal Rule of Civil Procedure 56, Arkema is entitled to judgment on Hall's claims as a matter of law.

### D.    Attorneys' Fees

In its Reply in support of summary judgment Arkema asks for the first time for an award of attorneys' fees.  A prevailing Defendant in an employment discrimination case is entitled to recover reasonable attorney's fees when a Plaintiff's case is frivolous, unreasonable, lacks foundation, or Plaintiff continues to litigate after realizing she has no evidence to support her claims.  *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 420 (1978) (attorney's fee statute intended to remove economic barriers to enforcement and also "to protect defendants from burdensome litigation having no legal or factual basis.").  "It is important that a district court resist

11

the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success." *Id.*; *Richardson v. Tex-Tube, Co.*, 843 F. Supp. 2d 699, 706 (S.D. 2012) ("The dismissal of a claim does not, itself, show that a suit was frivolous, unreasonable, or without foundation; instead, the defendant bears the burden of proving that the claim was meritless—an analysis independent of the dismissal."). Frivolousness must be judged on a case-by-case basis. *Provensal v. Gaspard*, 524 F. App'x 974, 976 (5th Cir. 2013).

While it is clear on this record that Hall cannot prevail on her claims against Arkema, and the Court understands Arkema's frustration at being brought into and kept in the case, the Court does not find Plaintiff's claims were frivolous, unreasonable, or without foundation. The joint employer doctrine is recognized in the Fifth Circuit and requires a case-by-case analysis based on the specific facts in the record. The cases in which prevailing defendants in Title VII cases are awarded fees generally involve more obviously meritless actions than Hall's attempt to define Arkema as a joint employer. *See Richardson*, 843 F. Supp. 2d at 706 (plaintiff not only testified that he had no facts to support his claims, but also could not show he had exhausted his administrative remedies, a prerequisite to filing suit); *Provensal*, 524 F. App'x at 976 (plaintiff's allegations were so vague as to not even identify his protected class; he acknowledged claims were time-barred; and the individual defendant was not his employer for purposes of Title VII). Arkema's motion for attorneys' fees is denied.

12

### IV.    Conclusion and Order

For the reasons discussed above, Defendant Arkema Inc.'s Motion for Summary Judgment (ECF 62) is GRANTED, and its Motion for Attorneys' Fees is DENIED.  Plaintiff's claims against Arkema, Inc. are dismissed in their entirety with prejudice.

Signed on December 23, 2020, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge