United States District Court
Southern District of Texas

**ENTERED**

September 01, 2021

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DOROTHY DENISE HALL, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.: 4:19-cv-02164 |
| | § | |
| ARKEMA, INC. & TEAM INDUSTRIAL | § | |
| SERVICES, INC., | § | |
| *Defendant*. | § | |

**<u>MEMORANDUM AND ORDER</u>**

This employment discrimination case is before the Court on Defendant Team Industrial Services, Inc.'s Motion for Summary Judgment.[1]  Having considered the parties submissions and the law, the Court grants in part and denies in part Team's Motion for Summary Judgment (ECF 94) and denies Team's motion to strike Hall's Sur-Reply (ECF 105).

**I.      Background**

The statements in this section are undisputed for purposes of summary judgment unless otherwise noted.  Defendant Team Industrial Services provides specialty industrial services to clients in the refining, petrochemical, power, pipeline, and other heavy industries.  One of Team's clients is former Defendant Arkema, Inc., a producer of specialty materials and chemicals.[2]  Team Senior Operations Manager Shawn Mullins hired Plaintiff Dorothy Hall in June 2015.

In December 2016, Team assigned Hall to work as a Level II Technician at Arkema's Clear Lake, Texas facility.  Hall's assignment was to assist Team's American Petroleum Institute (API) inspectors in catching up with Level II compliance testing.  Hall contends this was a "nested" full-

---

[1] The parties have consented to the jurisdiction of this Magistrate Judge for all purposes, including final judgment. ECF 78.

[2] The Court granted Arkema's Motion for Summary Judgment and dismissed Arkema as a defendant on December 23, 2020.  ECF 103.

time, long-term position with no defined end date; Team characterizes Hall's assignment as a "project" position, meaning it was a full-time, long-term assignment that would end when the compliance project was complete.  Team API Inspectors Moses Kormah and Adeniyi Buraimoh had been working in "nested" positions at the Arkema facility for years before Hall arrived. Mullins was the supervisor for Team employees working at Arkema's Clear Lake facility, but he did not have an office there.  The Arkema managers on-site at the Clear Lake facility were Ken Joiner, Scott McCray, and Steve Pittman.

Hall has testified that soon after her arrival at Arkema, Buraimoh began demeaning her for being a woman working in the male-dominated chemical field.  Hall alleges Kormah knew about, but did nothing to stop, Buraimoh's comments and also made disparaging comments to her.  Hall claims she reported the situation to Mullins who promised to talk to Buraimoh, but the situation did not improve.

In June 2017, Steve Pittman overheard Donald Gibson, an employee of a different contractor, make a comment about Hall's buttocks.  Pittman called Hall into his office to make sure she was okay and also reported the incident to Joiner and Mullins.  Joiner confronted Gibson about the incident.  Hall has stated that "in the end, Gibson apologized to [her] and [she] accepted it and moved on."  ECF 101-1, ¶24.

On March 1, 2018 someone took Hall's journal out of her purse and made copies of some of the entries.  Hall is convinced it was Kormah and Buraimoh because they had seen her writing in her journal and were whispering to each other.  Hall confronted Kormah and Buraimoh who denied taking her journal.  Hall was extremely upset and reported the incident to Joiner.  Joiner called Kormah and Buraimoh to his office to discuss the incident.  They denied involvement. Joiner called a meeting with Hall and Mullins to discuss the matter.  Hall recorded her conversation

with Joiner and Mullins without their knowledge.  The transcript Hall submitted with her summary judgment Response (ECF 101-2) reflects that Joiner and Mullins expressed concern for Hall's distress and agreed it was unacceptable for anyone to violate her privacy by going into her purse. Hall told Mullins and Joiner she was very upset and that "its [sic] been something everyday" with Kormah and Buraimoh.  ECF 101-2 at 7.  Although the details are unclear from the transcript, Hall mentioned a problem she felt was sexist.  *Id.* at 10.  After the meeting, and at Joiner's suggestion, Hall took the rest of the day off and returned to work at the Arkema facility on Monday, March 5, 2018.  Hall contends that upon returning to work Joiner called her into his office and told her that he, Mullins, and Pittman had decided to remove her from the Arkema plant.  According to Hall, Joiner told her that Pittman viewed her as a liability because she had made reports of gender discrimination and harassment.  While Hall was in his office, Joiner called Mullins and put him on speaker phone.  According to Hall, Joiner told Mullins that Joiner would like to go forward with removing Hall from the Arkema site as previously discussed.  Hall continued to work at the Arkema facility for several more days before being transferred to a different worksite.  To date, Team has not replaced Hall or filled the position she held at Arkema.

Team transferred Hall to the INEOS Chocolate Bayou facility and Hall worked there from March 12, 2018 to November 1, 2018.  She then worked for Team at the Chevron Phillips Cedar Bayou facility from November 5, 2018 through at least early 2019.  Team contends that after leaving the Arkema site Hall consistently worked 40+ hour work weeks with no decrease in her pay rate or benefits.  Hall alleges she has not had full-time, consistent work since leaving the Arkema location.  In March 2020, due to the COVID-19 pandemic, Team placed Hall and many other Team employees on furlough.  On October 27, 2020, Hall was laid off by Team due to the

pandemic and economic circumstances.  Hall's termination from Team in 2020 is not at issue in this lawsuit.

On December 3, 2018 and while she still worked for Team, Hall filed a Charge of Discrimination with the EEOC (EEOC Charge).  ECF 94-7. The EEOC dismissed the Charge and issued a notice of right to sue letter on March 19, 2019.  ECF 94-8.  Hall filed this lawsuit against Team and Arkema in June 2019.  Hall's operative pleading asserts claims against Team under Title VII for a hostile work environment based on sex, sex discrimination based on pay disparity, sex discrimination based on her transfer from Arkema, and retaliation.[3]  ECF 48 (Second Amended Complaint).  Team moves for summary judgment on Hall's claims on the grounds that (A) she failed to exhaust administrative remedies on certain of her claims; (B) the sexual harassment she alleges was not severe or pervasive, was not based on her sex, or, with respect to the Gibson incident, was promptly remedied; (C) she did not suffer an adverse employment action for purposes of sex discrimination or retaliation; and (D) she cannot show a causal link between her transfer from Arkema and sex discrimination or retaliation.

## II.    Summary Judgment Standards

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial.  *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001).  Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the

---

[3] Hall has "voluntarily nonsuit[ed] her pay disparity claim."  ECF 101 at 6.  In its Reply Team does not object to nonsuit or argue that dismissal must be with prejudice.  Team states "In her Response, Hall nonsuited her sex discrimination in pay claim.  Thus, this Court need only consider Hall's sex discrimination claim as it relates to her reassignment."  ECF 102 at 5, n.1.  Therefore, the Court grants Plaintiff's request for voluntary dismissal of her pay disparity claim without prejudice under Federal Rule of Civil Procedure 41(a)(2).

nonmoving party.  *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016).  "An issue is material if its resolution could affect the outcome of the action."  *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002).  If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and must present evidence such as affidavits, depositions, answers to interrogatories, and admissions on file to show "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor.  *R.L. Inv. Prop., LLC v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013).  In ruling on a motion for summary judgment the Court does not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  *Honore v. Douglas,* 833 F.2d 565, 567 (5th Cir. 1987).  However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (quoting *Celotex*, 477 U.S. at 325).

The Supreme Court summarized the appropriate inquiry when reviewing an employer's motion for summary judgment in Title VII cases in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148-49 (2000):

> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors.  Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

As in all cases, the Court must draw all reasonable inferences in favor of the non-movant and disregard all evidence favorable to the moving party that the jury is not required to believe.  *Id.* at

150-51.  Trial courts should not treat discrimination differently than other ultimate questions of fact for purposes of Rule 50 or 56.  *Id*. at 148.

**III.    Analysis**

  **A.    A Title VII plaintiff must exhaust administrative remedies.**

Team moves for summary judgment on Hall's claims—other than the claim that her transfer from the Arkema facility resulted from discrimination based on her sex—because she did not exhaust her administrative remedies.

Before pursing Title VII claims in federal court, a plaintiff must exhaust administrative remedies by filing a charge with the EEOC.  *Fort Bend County, Texas v. Davis*, 139 S. Ct. 1843, 1851 (2019) (holding that while not jurisdictional, Title VII's charge-filing requirement is a mandatory processing rule); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002) (citing *Dao v. Auchan Hypermarket,* 96 F.3d 787, 788-89 (5th Cir. 1996)).  Whether a plaintiff has exhausted a Title VII claim is determined "not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'"  *Pacheco v. Mineta*, 448 F.3d 783, 791 (5th Cir. 2006).  "Thus, a Title VIII lawsuit may include allegations 'like or related to the allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the [EEOC].'"  *Stingley v. Watson Quality Ford, Jackson, MS*, 836 F. App'x 286, 291 (5th Cir. 2020) (citing *McClain v. Lufkin, Indus., Inc.*, 519 F.3d 264, 272-73 (5th Cir. 2008)).  If the Court finds a plaintiff has failed to exhaust administrative remedies, the non-exhausted claim will be dismissed without prejudice.  *Stroy v. Gibson on behalf of Dep't of Veterans Affs.*, 896 F.3d 693, 698 n.2 (5th Cir. 2018) (citing *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 n.5 (5th Cir. 2004)).

**B.      Plaintiff did not exhaust administrative remedies on her hostile work environment claim.**

On her EEOC Charge form, Hall checked boxes to indicate she was complaining of discrimination based on sex and retaliation.  ECF 94-7 at 2.  Hall explained the basis for her EEOC Charge as follows:

> I believe I was discriminated against based on my sex (female) - working in a male dominated industry.
>
> I am employed by TEAM Industrial (formerly QualSpec).  I began working at the Arkema plant around mid-2016.  On or about 3/1/2018, I reported invasion of privacy due to two male coworkers going into my purse and taking my notebook and making copies of my personal notes.  I was asked to leave the plant by the maintenance manager of Arkema, Ken Joiner.  Mr. Joiner told me that he discussed the situation with Steven - Liability Manager - and they decided that since two very sensitive situations happened with me, I was a liability and should leave the plant. I advised Mr. Joiner that I was the victim in both situations and did not feel it was right that I should be the one to leave.
>
> I believe I was discriminated against based on my sex (a female working in a male dominated industry) and retaliated against, in violation of Title VII of the Civil Rights Act of 1990, as amended, inasmuch as in both situations I was the victim and the offenders were male coworkers, yet I was the one who was removed from the job site.

*Id.*

Hall's allegations in this case are much more expansive than those in her EEOC Charge. In her Second Amended Complaint, Hall alleges:  Buraimoh regularly made sexist remarks to her such as "women should not work in the field," "you're too pretty to be in the field," and "you should work in safety or management" (ECF 48, ¶¶ 3.12-3.13, 3.16; 101-1, ¶¶ 20-22);  She complained to Kormah but he merely made similar comments (ECF 48, ¶¶ 3.14, 3.19);  She also complained to Mullins, her Team supervisor, and Arkema's Joiner, but nothing improved[4] (ECF

---

[4] In her deposition, unlike in her summary judgment affidavit, Hall testified that after she complained to Mullins Kormah's comments stopped.  ECF 94-4 at 52-53.  Any conflict between Hall's deposition and affidavit testimony on this point is immaterial to the Court's exhaustion ruling.

48, ¶ 3.23; 101-1, ¶ 23);  Mullins called her "beautiful" and Joiner referred to her as "baby," and

"baby girl" (ECF 101-1, ¶ 41); In June 2017 Arkema's Reliability Manager Steven Pittman

overheard Donald Gibson make a comment about Hall's buttocks (ECF 48, ¶¶ 3.26; 101-1, ¶ 24);

Pittman reported to the incident to Joiner who discussed the matter with Gibson, who apologized,

and Hall "accepted it and moved on" (ECF 48, ¶ 3.27; 101-1, ¶ 24); Because of her gender, Hall

was not given proper computer access to perform her job and was not properly supervised (ECF

48, ¶¶ 3.35-3.36; ECF 94-4 (Hall Dep.) at 41-42); Kormah and Buraimoh copied her notes from

her personal journal after taking it from her purse and she reported the incident to Mullins and

Joiner (ECF 48, ¶¶ 3.37-3.47; ECF 101-2).

Few of the allegations in the Second Amended Complaint were included in Hall's EEOC

Charge.  However, Hall did mention "two very sensitive situations" in her EEOC Charge, even

though she did not specifically identify the 2017 Gibson incident.  An EEOC follow-up "intake

assessment note" states:

> [Hall] alleges she was the victim in two incidents with male coworkers yet she was
> removed from the workplace and the male coworkers remained.  First incident
> someone else reported a male coworker for making an inappropriate (sexual)
> comment to [Hall] and the second incident [Hall] report two male coworkers for
> going into her purse and making copies of her personal journal.

ECF 101-6 at 8.  Thus, while Team did not address the June 2017 Gibson incident in its position

statement, Hall did raise it with the EEOC.[5]  Team management was aware of the Gipson incident

and had every reason to know it was the incident to which Hall was referring when she mentioned

a second "sensitive" situation in her Charge.  The Court concludes that Hall has exhausted her

administrative remedies for a retaliation claim based on her transfer after reporting the Gipson

---

[5] The scope of Hall's Charge is determined by the Charge itself and by "looking slightly beyond its four corners to
determine its substance."  *Pacheco*, 448 F.3d at 788-89.  Therefore, the Court will not limit the Charge, and thus
exhaustion, to matters Team chose to focus on in its administrative response to the Charge.

incident and the photocopying incident.

In contrast, nothing in the EEOC Charge or the EEOC file as a whole gives notice of Hall's complaint of a hostile work environment resulting from severe or pervasive harassment by Kormah or Buraimoh, from Gibson's comment regarding her buttocks, or from any of the other factual allegations in the Second Amended Complaint.[6]  *See* ECF 101-6.  Nothing in the EEOC file indicates the EEOC investigated or reasonably could have been expected to investigate Hall's Charge as one for hostile work environment.[7]  *Id.*

The Fifth Circuit directs district courts not to construe a charge of discrimination to include facts which could have been asserted but were omitted.  *See Harris v. Honda*, 213 F. App'x 258, 261 (5th Cir. 2006).  The Fifth Circuit also has made clear that a claim for hostile work environment is not like or related to, or reasonably expected to grow out of, a charge of sex discrimination based on a discrete act (here Hall's transfer) for purposes of exhaustion.  *See Gates v. Lyondell Petrochemical Co.*, 227 F. App'x 409 (5th Cir. 2007) ("Gates's hostile environment and unequal pay claims could not be expected to grow out of her EEOC discrimination charge when she charged only her employer's discrete acts in terminating and failing to promote her, and made no mention of a hostile work environment or unequal pay."); *Hill v. Dep't of Veterans Affs.*, No. 08-60532, 2009 WL 348767, at *4 (5th Cir. Feb. 12, 2009)("[A]n investigation concerning

---

[6] To state a prima facie case of hostile work environment by a coworker, Plaintiff must show: (1) that she belongs to a protected class; (2) that she was subject to unwelcome harassment; (3) that the harassment was based on sex; (4) that the harassment affected a term, condition or privilege of employment; and (5) that the employer knew or should have known about the harassment and failed to take prompt remedial action. *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005).  In order to meet the fourth element, the harassment must be severe or pervasive. *Id.*

[7] The EEOC notified Hall of the dismissal of her charges on February 28, 2019.  ECF 101-6 at 23.  In a March 3, 2019 post-determination email to the EEOC representative handling her charge Hall stated, "my case *was solely for discrimination against me because of the incident that happened to me at the facility* which was one of sexual harassment and two invasion of privacy."  ECF 101-6 at 21 (emphasis added).  Although she uses the phrase "sexual harassment," Hall states in her letter that her charge was based on the discrete incident of photocopying that preceded her transfer and that is the basis for her sex discrimination claim.  In any event, this email exchange occurred after the EEOC informed Hall of its ruling and therefore cannot be construed as part of her EEOC Charge.

the existence of a hostile work environment would not 'reasonably be expected to grow out of' .

. . allegations of discrete acts of discrimination."); *Walton-Lentz v. Innophos, Inc.*, 476 F. App'x

566, 570 (5th Cir. 2012) (failure to mention particular facts regarding her hostile work environment

claim was not "a technical charge deformity, but more in the nature of a failure to allege facts that

require no artful drafting or specialized skill" and thus summary judgment was proper on plaintiff's

hostile work environment claim); *see also Carter v. Burlington N. Santa Fe LLC*, No. 4:15-CV-

366-O, 2015 WL 11022766, at *7 (N.D. Tex. Oct. 9, 2015) (plaintiff failed to exhaust

administrative remedies because charge alleging discriminatory termination did not give employer

notice of a hostile-work-environment claim).

Viewing Hall's EEOC Charge in "its broadest reasonable sense,"[8] the Court finds that it

fails to give rise to a hostile work environment claim or to a retaliation claim based on conduct

other than her transfer from Arkema for reporting the Gipson and photocopying incidents.[9] Hall's

unexhausted claims must be dismissed without prejudice.

### C.   Team is entitled to summary judgment on Plaintiff's administratively exhausted claim of discrimination based on her sex.

Hall alleges that Team discriminated against her on the basis of her sex when it transferred

her, but not Kormah or Buraimoh, from the Arkema facility.  This claim is subject to the familiar

*McDonnell Douglass* burden shifting framework under which a plaintiff relying on circumstantial

evidence of discrimination must demonstrate a prima facie case of discrimination.  *Patel v.*

*Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 342 (5th Cir. 2002).  If a plaintiff meets this

prima facie burden, a presumption of discrimination or retaliation arises, shifting the burden of

---

[8] *See* ECF 101 at 14 (citing *Clayton v. Rumsfeld*, 106 F. App'x 268, 271 (5th Cir. 2004) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462, 467 (5th Cir. 1970)).

[9] Because the Court finds that Plaintiff has not exhausted her remedies on a sex-based hostile work environment claim, the Court does not address Team's argument that the alleged harassment was not severe or pervasive or any other of Team's grounds for dismissal of the hostile work environment claim.

production to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. *Id.*; *Hernandez v. Metro. Transit Auth. of Harris Cty.*, 673 F. App'x 414, 417 (5th Cir. 2016). If the employer states a legitimate reason for its action, the inference of discrimination disappears, and the burden shifts back to the plaintiff to present evidence that the employer's proffered reason is merely pretextual. *Id.* "In contrast to the minimal burden that a plaintiff bears when establishing his prima facie case, a plaintiff must produce 'substantial evidence of pretext.'" *Id.* at 419 (quoting *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402–03 (5th Cir. 2001)). The plaintiff always bears the ultimate burden to prove discrimination. *Outley v. Luke & Assoc., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016).

To make a prima facie case of sex discrimination, Hall must show: (1) she belongs to a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) she was replaced by someone outside of the protected class or was otherwise treated less favorably than other similarly situated employees outside her protected class. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). An adverse employment action in the discrimination context refers to "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Felton v. Polles,* 315 F.3d 470, 486 (5th Cir. 2002), *overruled on other grounds by Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). A lateral transfer does not meet the standard for an adverse employment action. *Alvarado v. Texas Rangers*, 492 F.3d 605, 612 (5th Cir. 2007) ("It is well established that the denial of a purely lateral transfer is not an adverse employment action redressible under Title VII.").

Team argues that Hall cannot meet her prima facie burden because she did not suffer an adverse employment action and was not treated differently than others based on her sex. Alternatively, Team argues that it had a legitimate, non-discriminatory reason for transferring Hall

and she has no evidence that the reason is pretext for discrimination.[10]  Because the Court finds

that Hall has not met her prima facie burden, it need not address the pretext arguments.

Hall contends that her position at Arkema was a nested position and that after her transfer

Team never again assigned her to a nested position.  ECF 101-1, ¶¶ 14, 48.  Mullins and Kormah

testified that Hall's position at Arkema was not nested and was a project position like the position

to which she was transferred.[11]  ECF 94-1, ¶¶ 12-14;  94-5 at 23.  Hall's testimony that her position

at Arkema was nested is conclusory and not corroborated by any other evidence.  Nonetheless,

assuming Hall has created a genuine factual dispute on this point, the dispute is not material to

whether her transfer constituted an adverse employment action as required to support a Title VII

discrimination claim.

Hall has presented no evidence demonstrating that nested employment is guaranteed to last

for any particular length of time,[12] and Hall has conceded that all Team assignments last only as

long Team's customer wants the work to continue.  ECF 94-4 at 15.  Hall cannot demonstrate that

she was guaranteed a particular period of work in a nested or project position.  Therefore, a transfer

from a nested position to a project position without a change in pay or benefits does not constitute

an adverse employment action.  In addition, Hall's own Affidavit establishes that she worked

steadily for over a year after her transfer from the Arkema facility.  ECF 101-1, ¶ 54 (list of days

she missed worked).  Hall's earning statements for March 23, 2018 through April 19, 2019 show

that Hall consistently worked more than 40 hours a week during the year following her transfer

---

[10] As its legitimate, non-discriminatory explanation for the transfer, Team contends that it was a safety hazard having so much tension between employees at the plant and that Hall's assignment at Arkema was coming to an end anyway. ECF 94-2 at 32, 28 (Mullins testified that Arkema informed Team in early 2018, before the photocopying incident, that Arkema would not need Hall "too much longer based upon the budget and the compliance.").

[11] Despite her insistence that the Arkema position was nested, Hall does not dispute Team's representation that she was assigned to the Arkema as part of a project "to help Team's American Petroleum Institute ("API") Inspectors catch up on Level II duties and compliance."  ECF 94 at 11.

[12] Mullins states in his Declaration that nested assignments are not permanent or for a definite period and no Team employee is guaranteed a minimum number of work hours per week at the same location.  ECF 94-1, ¶ 5-6.

from the Arkema facility.[13]  ECF 102-7.  Hall further concedes her pay rate and benefits did not decrease after the transfer.  ECF 94-4 at 14, 16.  In fact, after her transfer from the Arkema facility, Team gave Hall a raise in September or October, 2019 and provided her with a car while she was assigned to the INEOS Chocolate Bayou facility.  ECF 101-1, ¶ 53; ECF 94-4 at 19; ECF 94-1, ¶ 14.  Any subsequent decrease in pay after the COVID 19 pandemic began is too attenuated from the events in this case to constitute an adverse employment action. The summary judgment record demonstrates that Hall cannot meet her burden under Title VII to show that she suffered an actionable adverse employment action.

In addition, Hall's summary judgment evidence fails to raise a fact issue on the fourth element of a prima facie case of sex discrimination.  It is uncontroverted that Team never replaced Hall with another Level II Inspector at the Arkema facility.  ECF 94-2 at 9.  Therefore, Hall cannot show she was replaced by someone outside of her protected class.  Further, Hall has presented no evidence from which a jury could find that similarly situated male employees were treated differently under nearly identical circumstances.  *See Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (the Fifth Circuit requires "that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'").  Kormah and Buraimoh are not valid comparators because they had more seniority than Hall and, as API Inspectors, they held a higher-level certification than Hall's Level II Technician certification.[14]  *See id.* (employment actions can only be compared when the employees involved held the same job or responsibilities); *Patrick v. Walmart, Inc.*, No. 20-30403,

---

[13] Although Hall's Declaration indicates her hours dropped off after April 2019, they dropped most significantly after the onset of the Covid-19 pandemic beginning in March 2020.  *See* ECF 101-1, ¶ 54; ECF 94-1, ¶ 24.

[14] Gibson is not a comparator because he was not a Team employee.

2021 WL 2654960, at *1 (5th Cir. June 28, 2021) ("Employees who have different work responsibilities generally are not similarly situated").

> D.     **Team is not entitled to summary judgment on Plaintiff's administratively exhausted claim for retaliation.**

The elements of a Title VII retaliation case are: (1) plaintiff engaged in conduct protected by Title VII;[15] (2) plaintiff suffered a materially adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 269 (5th Cir. 2015. Team argues it is entitled to summary judgment because Hall cannot create a fact issue as to a materially adverse employment action or demonstrate a "but for" causal connection between the alleged adverse employment action and her protected activity. *See* ECF 94 at 35-40.

Hall argues that she has presented direct evidence of retaliation, *i.e.*, Joiner's statement that he, Mullins, and Pittman decided to end her assignment at Arkema because her two reports of gender discrimination caused Pittman to believe she was a liability. ECF 101-1, ¶ 38. "Direct evidence is evidence that if believed, proves the fact of discriminatory animus without inference or presumption." *Harry v. Dallas Hous. Auth.*, 662 F. App'x 263, 266 (5th Cir. 2016). A plaintiff who has direct evidence of a retaliatory motive may bypass the *McDonnell Douglas* evidentiary framework. *See Stone v. Par. of E. Baton Rouge*, 329 F. App'x 542, 545 (5th Cir. 2009) (plaintiff relying on direct evidence of discrimination is entitled to bypass the McDonnell Douglas burden-shifting framework and proceed directly to the question of liability). Hall's testimony that Team

---

[15] With respect to the first element, Hall asserts she engaged in protected activity by: (1) providing oral statements to Mullins, Joiner, and Pittman regarding Gibson's June 2017 remark; (2) reporting Buraimoh's sexist remarks to Kormah; (3) reporting to Mullins Buraimoh's sexist remarks and Kormah's lack of response; (4) telling Joiner on February 28, 2018 that she worried her job was in jeopardy because of Buraimoh's and Kormah's sexist attitudes towards her; (5) reporting to Joiner and Mullins on March 1, 2018 that Buraimoh and Kormah copied her journal as part of their sexist behavior towards her. ECF 101 at 28-29.

transferred her because Joiner, Mullins, and Pittman decided she was a liability due to her claims of gender discrimination, if accepted as true, proves Team's retaliatory motive without inference or presumption and constitutes direct evidence of retaliation.  Even given direct evidence of retaliation, however, Hall must show her transfer from the Arkema facility qualifies as a materially adverse employment action.[16]

The definition of an adverse employment action in the retaliation context is broader than the definition used in the discrimination context.  *See Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945–46 (5th Cir. 2015) (noting that adverse employment actions for retaliation claims are not limited to the workplace, and the standard is less demanding than an ultimate employment decision).  An adverse employment action in the retaliation context is one that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Id.* at 945 (alteration in original) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).  Whether an action meets this standard is judged by the standard of a "reasonable employee," and will often depend upon the particular circumstances in an employee's case.  *Id.* (quoting *Burlington*, 548 U.S. at 69); *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008) (a retaliation claim may rest on an action that a reasonable employee would find materially adverse).

In this case, the distinction between an ultimate adverse employment decision required for a discrimination claim and a materially adverse employment action required for a retaliation claim compels a different conclusion on the retaliation claim as compared to the sex discrimination

---

[16] Hall did not plead or argue that her reduction in hours starting in March 2019 constitutes a materially adverse employment action independent of her initial transfer.  *See* ECF 48, ¶ 4.7; ECF 101 at 26-31.  In any event, there is no direct or circumstantial evidence in the record, not even a scintilla, that the reduction in hours she experienced a year after her transfer was in any way connected to the protected activity she allegedly engaged in at the Arkema facility.  *See Newbury v. City of Windcrest, Tex.*, 991 F.3d 672, 679 (5th Cir. 2021) ("To establish causality, the protected activity and the adverse action must have 'very close' temporal proximity, and 'a five month lapse is not close enough . . . to establish the causal connection element of a prima facie case of retaliation.'" (citation omitted)).

claim.  Although Hall's evidence that her position at Arkema was a nested assignment is thin, her statements in her Declaration must be taken as true for purposes of summary judgment.  ECF 101-1, ¶ 14 ("I am personally aware that Arkema's Joiner approved of me working as a nested employee.").  Team has presented no business records demonstrating that Hall's Arkema position was a project assignment.  The Court cannot weigh the evidence or make credibility judgments on summary judgment.  *Honore v. Douglas,* 833 F.2d 565, 567 (5th Cir. 1987).  Therefore, Hall has presented some evidence creating a fact issue with respect to whether she enjoyed a nested position prior to her transfer from Arkema.

If a jury finds that Hall's assignment at Arkema was a nested position, the jury should decide whether her transfer was materially adverse.  *See McArdle v. Dell Prods., L.P.*, 293 F. App'x 331, 337 (5th Cir. 2008) ("Whether a reasonable employee would view the challenged action as materially adverse involves questions of fact generally left for a jury to decide," citing *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71-73 (2006)).   Whether any particular employment action is materially adverse depends on the context and particular circumstances of the case.  *Blanchard v. Global Expertise Outsourcing, Inc.*, Civil Action No. 4:07cv66, 2008 WL 4939532, at *6-7 (citing *Burlington Northern*, 548 U.S. at 69).  While Hall suffered no decrease in pay rate or benefits and had no guarantee her Arkema position would last indefinitely, she testified to the increased sense of job security, or "certain[ty]," that attaches to a nested position.  ECF 101-1, ¶¶ 3, 5.  Mullins testified that Team had four categories of assignments (nested, project, turnaround, and callout) based on the expected duration of the assignment.  ECF 94-1, ¶ 5.  Viewing the evidence in the light most favorable to Hall, the Court cannot say as a matter of law that a reasonable Team employee would not be dissuaded from

complaining about discrimination by the prospect of a transfer from a nested position to a project position. For these reasons, Team is not entitled to summary judgment on Hall's retaliation claim.

## IV.      Conclusion and Order

For the reasons discussed above, Defendant Team's Motion for Summary Judgment (ECF 94) is GRANTED IN PART AND DENIED IN PART. It is ORDERED that Plaintiff's claims for discriminatory pay disparity, sexually hostile work environment, and retaliation based on conduct other than her transfer for reporting the Gipson and photocopying incidents claims are DISMISSED WITHOUT PREJUDICE. Plaintiff's sex discrimination claim is DISMISSED WITH PREJUDICE. Plaintiff's claim for retaliation based on her transfer after reporting the Gipson and photocopying incidents remains for trial.

Signed on September 01, 2021, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge